## Case No. 16,570.

### UNITED STATES v. TWENTY–SIX BALES OF RUBBER BOOTS.

[3 Ware, 205;[1] 20 Law Rep. 444.]

District Court, D. Massachusetts. Nov., 1858.[2]

CUSTOMS DUTIES—FORFEITURE FOR UNDERVALUATION—MANUFACTURING IMPORTER.

1. An information against 26 cases of rubber boots as liable to forfeiture under the 66th section of the act of March 2, 1799. c. 128 [1 Story's Laws, 631; 1 Stat. 677, c. 22], for the production of an invoice by the importer at the entry not according to the actual cost but below it. with the design to evade the duties.

2. Plea, that the importer was the manufacturer of the goods, adjudged good.

3. The 36th section of the act requires the importer in all cases to enter his goods at the actual cost, and verify his entry by oath, and to produce at the entry the original invoice and bill of lading; and by the 66th section. if the invoice thus produced is made not according to the actual cost, with a design to evade the duties or a part of them, the goods or their value shall be forfeited.

4. The act of 1823 [3 Stat. 729] excepts from the act of 1799. the case of an importer who is the manufacturer of the goods, or who has obtained them otherwise than by purchase, and requires of him an invoice stating the true market value.

[1] [Reported by Geo. F. Emery. Esq.]
[2] [Affirmed in Case No. 16,571.]

[5. The case at bar distinguished from Wood v. U. S., 16 Pet. (41 U. S.) 342.]

Chas. Levi Woodbury, U. S. Dist. Atty.
Milton Andros, for claimants.

WARE, District Judge. This is an information against twenty-six cases of rubber boots, which were entered at the custom-house at Rouse's Point, in the Northern district of New York. January 29, 1857, and thence transported to Boston, and on the 12th of February seized by the collector of the district of Boston and Charlestown, as forfeited to the United States. The alleged cause of forfeiture is that the entry was made on an invoice produced at the entry in which the goods were invoiced as is alleged not according to the actual cost at the place of importation, but at a less price, with the design to evade the duties or some part of the same in fraud of the United States, and in violation of the 66th section of the act of congress of March 2, 1799. To this information the claimants, protesting that the allegations in the information were not true, have put in a plea in bar that they were the manufacturers of the goods, and imported them as such. To this plea the United States have demurred.

The question which arises on the pleadings, and has been argued at the bar, is whether the 66th section of the act of 1799, so far as it is applicable to this case, is in force, or has been repealed by subsequent legislation. The 36th section of the act directs that the owner, on the entry of his goods, shall state their prime cost, including certain charges, which are enumerated, and also shall produce the original invoice of the goods' in the same state as when received, and then goes on to prescribe the form of the oath to be administered on the entry. This affirms among other things, that the entry contains a just and true account of the cost, and that the invoice and bill of lading produced are genuine and true, and the only invoice and bill of lading received. In the 66th section it is then enacted: "That if any goods, wares, or merchandise, of which entry shall have been made in the office of a collector, shall not be invoiced according to the actual cost thereof, at the place of importation, with the design to evade the duties thereupon or any part thereof, all such goods, wares, and merchandise, or the value thereof, to be recovered of the person making the entry, shall be forfeited." 1 Stat. 677. Thus the law appears to have remained until 1818. The act of April 20, 1818, supplementary to the act of 1799 (4 Stat. 433, c. 79), like the former act, requires the production of the original invoice on the entry, and the 5th section provides, in addition to the oath then required of the owner by law, that he should declare on oath that the invoice produced of goods subject to an ad valorem duty exhibits the true value of such goods at the place of exportation. And by the 8th section it is pro-

vided that when the importer is not a resident in the United States, the invoice shall be verified by the owner's oath before a consul of the United States, and he shall further declare, on oath, whether he is the manufacturer, and if so, that the goods are charged in the invoice at their current value at the place of manufacture. This act was by the act of April 18, 1820 (3 Stat. 505), continued in force till 1823. The act of March 1, 1823, § 1 (3 Stat. 729), in like manner with the preceding statutes, requires, on the entry, the production of the invoice, and the 4th section gives the forms of three oaths, one of which, according to the nature of the case, is to be administered to the owner, importer, or consignee, "in lieu of the oath now prescribed by law in such case." The third is the one applicable to this case, and is called the manufacturer's oath, to be administered in cases where the goods have not been actually purchased. In this, the owner is required to swear that the goods "were not actually bought by him or his agent, in the ordinary mode of bargain and sale, but that nevertheless the invoice produced, contains a just and faithful valuation of the same at their fair market value, including charges," etc. The 5th section directs that the ad valorem rates of duty shall be estimated on the actual cost if obtained by purchase, and the actual value if obtained otherwise, as in this case, and not on the cost as directed in all cases by the act of 1799. One of these oaths is to be administered in lieu, that is as a substitute, for the oath then required by law. That, as it appears, was the oath required by the 36th section of the act of 1799, as modified by the act of 1818; and it is a violation of the act of 1799, in relation to the entry of the goods, that is charged in the information as the cause of forfeiture in this case. The act of 1823, appears to be still in force, so far as relates to the entry of goods, and the oaths to be administered on the entry. At least no act repealing this part of the law was referred to in the argument, and I have found none. The oaths required by that act are declared to be a substitute for the oath then required, which was that prescribed by the act of 1799, as modified by the act of 1818. The character of the invoice to be produced and sworn to is different from that required by the act of 1799. That was the actual cost, and for this is substituted the fair market value when not obtained by purchase; and these it is plain may be different. By the act of 1799, the duties were to be assessed on the actual cost,—by that of 1823, on the actual value in cases like that now under consideration. The latter act then necessarily repeals the former. It expressly repeals it as to the oath, and by unavoidable implication as to the invoice, when the importer is the manufacturer, by requiring a different invoice. It cannot be pretended that two invoices must be produced and sworn to, one of which must necessarily be false. The

acts of 1830 (4 Stat. 409), of 1832 (4 Stat. 423), of 1842 (5 Stat. 563), and of 1846 (9 Stat. 43), do not, as far as I can find, reinstate the oath, and the regulation respecting the invoice, of the act of 1799, in cases like the present, when the manufacturer is the importer. If repealed by the acts of 1823, they remain repealed, and there can be no forfeiture for the violation of a repealed and extinct law.

This is the conclusion to which I should have come free from difficulty, if the case was not embarrassed by former judicial decisions, which are binding on this court. But in the case of Wood v. U. S., 16 Pet. [41 U. S.] 356, it was decided that the 66th section of the act of 1799 was in full force. That was a seizure of 22 packages of piece goods, imported into New York in the years 1839 and 1840. The information contained a large number of counts, but the one relied on, and on which the goods were condemned, was founded on this section of the law of 1799; and the forfeiture was claimed on the ground of making use of a fraudulent invoice, not according to the actual cost in making the entry. That decision was followed by the case of Taylor v. U. S., 3 How. [44 U. S.] 200, the case of Clifton v. U. S., 4 How. [45 U. S.] 242, and U. S. v. Sixty-Seven Packages of Dry Goods, 17 How. [58 U. S.] 89, in 1854. All these cases followed, and affirm the decision in Wood v. U. S. [supra], and hold that the 66th section of the act of 1799, on which this information is founded, is still in force. If these decisions cannot be distinguished from the case at bar, then, whatever may be my private opinion, the plea in bar must be adjudged bad, and judgment rendered for the forfeiture.

In all these cases there were counts on the 66th section of this act, claiming a forfeiture for producing an invoice not according to the actual cost. But in none of them does it appear from the printed reports that the importations and entry were made by the manufacturer. By subsequent legislation, as well as by the act of 1799, imported goods, bearing an ad valorem duty, when obtained by purchase, were required to be invoiced according to the actual cost. And though in some of them a different penalty for the use of a false and fraudulent invoice was imposed, the court has steadily held that the penalty prescribed of a forfeiture of the goods or their value by the 66th section was not repealed but is still in force. The doctrine of the court is that prior laws for the collection of the revenue are not impliedly repealed by subsequent legislation, except so far as there is a direct repugnancy between the later and the earlier law, and then only so far as the repugnancy exists. In none of these cases was the law brought to the attention of the court in the precise point of view now presented. And, if we refer to the reasoning of the court in the case of Wood v. U. S., which is referred to and approved

in the subsequent decisions, it appears to me, that it will admit of a distinction, while holding the section of the act in question to be generally in force and unrepealed, that will take this case out of it. If we suppose in these cases what seems to be a fact, that a fraudulent invoice below the actual cost was used in the entries by purchasers of the goods, the identical offence was committed, for which the penalty in this section of the law was intended. Though later laws have made provisions for the same offense and armed them with penalties. these may be considered as cumulative, and as this section has not been expressly repealed. the adding of a cumulative remedy in fiscal law is not held to be an implied abrogation of a preëxisting law. It may be conceded that the government cannot claim both penalties, and they may be still at liberty to prosecute for one or the other, at their election.

The fiscal laws of the country, though bristling with forfeitures and penalties, are not held to be penal laws in the technical sense of the word, and like them to receive a strict and narrow construction. [Taylor v. U. S.] 3 How. [44 U. S.] 210. The penalties are for the prevention of fraud, and the protection of the revenue, and they operate incidentally for the benefit and protection of the honest importer and trader, against his fraudulent competitors. For the common interest as well of the government as of honest trade. they are to be allowed a fair and reasonable operation in furtherance of the intention of the legislature. But, giving this construction to our complex revenue laws, it appears to me that the act of 1823 necessarily repeals so much of the 36th and 66th sections of the act of 1799 as applies to this case. It excepts out of the general rule requiring the importer to produce an invoice stating the cost, the case where he is the manufacturer, by requiring of him to produce a different invoice. The two laws appear to have that repugnancy, that both cannot stand together, and that the latter must be held to repeal and annul the former in this particular.

The result is that the plea in bar is adjudged good.

[The cause was taken to the circuit court upon a writ of error, where the judgment was affirmed. Case No. 16,571.]